IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Edward W. Nottingham**

Civil Action No. 04–cv–01685–EWN–OES

VIRGIL STICKLEY,

    Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

    Defendant.

**ORDER AND MEMORANDUM OF DECISION**

    This is an insurance case. Plaintiff Virgil Stickley alleges that Defendant State Farm Mutual Automobile Insurance Company (1) breached the insurance contract between them; (2) willfully and wantonly breached the insurance contract; and (3) breached the implied covenant of good faith and fair dealing. In addition, Plaintiff seeks declaratory relief and reformation of the insurance contract. This matter is before the court on (1) "Defendant's Motion for Summary Judgement," filed April 18, 2005; (2) "Plaintiff's Motion for Partial Summary Judgment," filed April 18, 2005; and (3) Plaintiff's "Request for Oral Argument," filed April 21, 2005. Jurisdiction is based on 28 U.S.C. § 1332, diversity of citizenship.

# FACTS

## *1. Factual Background*

### *a. Overview of No-Fault Act and Brennan*

Before addressing the issues raised by this case, I review the relevant portions of Colorado's No-Fault Act, which was repealed in 2003,[1] and the decision in *Brennan v. Farmers Alliance Mutual Insurance Company*, 961 P.2d 550 (Colo. App. 1998), *cert. denied*, 1998 Colo. Lexis 587 (Colo. Aug. 24, 2998), interpreting those provisions. "The No-Fault Act requires that a complying [contract] include mandatory PIP benefits." *Brennan*, 961 P.2d at 552. Section 10–4–706(1) sets forth the basic coverages for inclusion in a complying insurance contract. Specifically, section 10–4–706(1), as relevant here, requires a carrier to provide:

> (b)(I) Compensation without regard to fault, up to a limit of fifty thousand dollars per person for any one accident, for payment of all reasonable and necessary expenses for medical . . . and nonmedical remedial care and treatment . . . performed within five years after the accident for bodily injury arising out of the use or operation of a motor vehicle . . . .
> (c)(I) Compensation without regard to fault up to a limit of fifty thousand dollars per person for any one accident within ten years after such accident for payment of the cost of rehabilitation procedures or treatment and rehabilitative occupational training necessary because of bodily injury arising out of the use or operation of a motor vehicle.

Colo. Rev. Stat. § 10–4–706(1)(b)(I), (1)(c)(I). Further, section 10–4–706(4)(a) provides that:

> An insurer issuing policies providing coverages as set forth in this section shall provide written explanations of all available coverages prior to issuing any policy

---

[1] Colorado's No-Fault Act comprised Colorado Revised Statutes sections 10–4–701 to 10–4–726, *repealed by* Laws 1997, H.B. 97–1209, § 8, effective July 1, 2003. *See* Colo. Rev. Stat. § 10-4-726 (effective July 1, 2003). Thus, I cite to the 2002 version of Colorado Revised Statutes.

>
> to an insured.  After a named insured selects a policy with desired personal injury protection coverage, an insurer shall not be under any further obligation to notify such policy holder in any renewal or replacement policy of the availability of basic personal injury protection policy or of any alternative personal injury protection coverage.

Colo. Rev. Stat. § 10–4–706(4)(a).  Section 10–4–707 defines the category of people who receive coverage under section 10–4–706 to include: (1) the named insured, (2) resident relatives of the named insured, (3) passengers occupying the insured's vehicle with the consent of the insured, and (4) pedestrians who are injured by the covered vehicle.  *Brennan*, 961 P.2d at 553.

The Colorado No-Fault Act also requires every insurer to offer the named insured extended PIP benefits in exchange for higher premiums.  *See* Colo. Rev. Stat. § 10–4–710(2)(a); *see also Clark v. State Farm Mut. Auto. Ins. Co.*, 319 F.3d 1234, 1238 (10th Cir. 2003).  Specifically, section 10–4–710(2)(a) requires that:

> Every insurer shall offer the following enhanced benefits for inclusion in a complying policy, in addition to the basic coverages described in section 10–4–706, at the option of the named insured:
> (I) Compensation of all expenses of the type described in section 10–4–706(1)(b) without dollar or time limitation;
> (II) Compensation of all expenses of the type described in section 10–4–706(1)(b) without dollar or time limitations and payment of benefits equivalent to eighty-five percent of loss of gross income per week from work the injured person would have performed had such injured person not been injured during the period commencing on the day after the date of the accident without dollar or time limitations.

Colo. Rev. Stat. § 10–4–710(2)(a).  In *Brennan*, the Colorado Court of Appeals determined that the extended PIP coverage set forth in section 10–4–710(2)(a) applied to pedestrians.  *Brennan*, 961 P.2d at 553.  The *Brennan* court concluded that "it is apparent that the extended coverages offered there must apply to the categories of persons listed in [section] 10–4–707(1)."  *Id.*  Thus,

following *Brennan*, insurers could not use the pedestrian limitation in their insurance contracts. The court noted that the "directive of [section] 10–4–710 is to the insurer, not the insured: all that is required is that the insurer offer these extended benefits." *Id.* at 554.

### b.     *Facts Relevant to Plaintiff Stickley*

On December 21, 1992, Plaintiff's wife, Mary Stickley, purchased an automobile insurance policy on Plaintiff's behalf from Defendant. (Def.'s Mot. for Summ. J., Def.'s Mem. Br. in Supp. of its Mot. for Summ. J., Statement of Undisputed Material Facts ¶¶ C, D [filed Apr. 18, 2005] [hereinafter "Def.'s Br."]; *admitted at* Pl.'s Resp. to Mot. for Summ. J., Resp. to Statement of Undisputed Material Facts ¶¶ C, D [filed May 25, 2005] [hereinafter "Pl.'s Resp."], Pl.'s Mot. for Partial Summ. J., Statement of Undisputed Material Facts ¶ 1 [filed Apr. 18, 2005] [hereinafter "Pl.'s Br."].) On or about December 21, 1992, Plaintiff's wife signed Plaintiff's application for automobile insurance. (*Id.*, Statement of Undisputed Material Facts ¶ D; *admitted in relevant part at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ D.) The application offered four options of personal injury protection ("PIP") benefits. (*Id.*, Ex. A–4 [Application for State Farm Auto. Ins.].) Defendant insured Plaintiff's vehicle under policy number 656 0248–C22–06G ("the Policy"). (*Id.*, Statement of Undisputed Material Facts ¶ B; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ B.)

In or about August 1998, Defendant sent Plaintiff a renewal notice for the Policy along with an informational bulletin captioned "News & Notes." (Def.'s Br., Statement of Undisputed Material Facts ¶ S; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ S.) Plaintiff's August 1998 renewal notice quoted the premiums for "Higher Personal Injury

Protection Coverage" at the P4 and P8 levels and referred Plaintiff to the enclosed "News & Notes" article for an explanation of those coverages. (*Id.*, Statement of Undisputed Material Facts ¶ U; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ U.) The renewal notice stated as follows:

> **HIGHER PERSONAL INJURY PROTECTION COVERAGE LIMITS ARE AVAILABLE**
> You can purchase higher Personal Injury Protection coverage limits with no deductible.
> Coverage P4 semi-annual Premium = $110.16
> Coverage P8 semi-annual Premium = $107.27
> See the enclosed News and Notes article for an explanation of these coverages.

(*Id.*, Ex. A–10 [Pl.'s Auto Renewal Form].) The accompanying "News & Notes" brochure described the benefits available under P4 and P8 coverages and stated that "[i]f you are interested in purchasing either of these coverages, please contact your State Farm agent." (*Id.*, Ex. A–10 at 3 [Pl.'s Auto Renewal Form].) Plaintiff paid the premium for enhanced P3 PIP coverage set forth in the renewal notice, Plaintiff never requested or paid for P4 or P8 PIP coverage. (*Id.*, Statement of Undisputed Material Facts ¶ W; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ W.)

Defendant's Endorsement 6850AJ to the Policy became effective no later than March 22, 1999. (Def.'s Br., Statement of Undisputed Material Facts ¶ F; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ F.) The Endorsement eliminated the pedestrian limitation from Plaintiff's policy and offered Plaintiff enhanced PIP benefits. (*Id.*, Ex. A–2 [Endorsement 6850AJ].) Plaintiff chose enhanced PIP coverage at the P3 level. (*Id.*, Statement of Undisputed Material Facts ¶ G; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed

Material Facts ¶ G.) On October 6, 1999, Plaintiff was involved in an accident while driving his employer's vehicle. (*Id.*, Statement of Undisputed Material Facts ¶ A; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ A, Pl's Br., Statement of Undisputed Material Facts ¶ 2.)

## *2. Procedural History*

On August 16, 2004, Plaintiff filed a complaint in this court. (Compl. and Jury Demand [filed Aug. 16, 2004] [hereinafter "Compl."].) Plaintiff asserted four claims for relief: (1) declaratory relief/reformation; (2) breach of the insurance contract; (3) willful and wanton statutory bad faith; and (4) breach of the implied covenant of good faith and fair dealing. (*Id.* ¶¶ 37–60.) On October 20, 2004, Defendant filed an answer to Plaintiff's complaint. (Answer [filed Oct. 20, 2004].)

On April 18, 2005, Defendant filed a motion for summary judgment. (Def.'s Br.) Defendant argues that (1) Plaintiff does not have standing to seek relief as a pedestrian under the policy; (2) summary judgment is appropriate to the extent Plaintiff's claims rely on Colo. Rev. Stat. § 10–4–706(4)(a); (3) fourteen months prior to Plaintiff's accident, Defendant offered Plaintiff enhanced PIP benefits and Plaintiff declined; (4) Plaintiff's benefits have been wholly offset by payments from his worker's compensation carrier, leaving Plaintiff no compensable damages; and (5) Plaintiff waived any entitlement to medical or wage loss benefits under his PIP policy when he settled his worker's compensation claim. (*Id.* at 9–19.) On May 25, 2005, Plaintiff filed a response to Defendant's motion for summary judgment. (Pl.'s Resp.) On June 22, 2005, Defendant filed a reply in support of its motion for summary judgment. (Def.'s Reply to

Pl.'s Resp. to Def.'s Mot. for Summ. J. [filed June 22, 2005] [hereinafter "Def.'s Reply"].) This matter is fully briefed.

On April 18, 2005, Plaintiff filed a motion for partial summary judgment. (Pl.'s Br.) Plaintiff argues that (1) Colo. Rev. Stat. § 10–4–706(4)(a) requires that "prior to issuance of a policy, written PIP explanations must be in writing;" (2) Defendant never made a legally sufficient offer of extended PIP benefits; (3) Defendant's alleged offer was made at a time when Defendant did not have a statutorily-compliant policy. (*Id.* at 6–18.) On May 25, 2005, Defendant filed a response to Plaintiff's motion for partial summary judgment. (State Farm's Resp. to Pl.'s Mot. for Partial Summ. J. [filed May 25, 2005] [hereinafter "Def.'s Resp."].) On June 22, 2005, Plaintiff filed its reply in support of the motion for partial summary judgment. (Pl.'s Reply Re: Mot. for Partial Summ. J. [filed June 22, 2005] [hereinafter "Pl.'s Reply"].) This matter is fully briefed.

## ANALYSIS

### *1.  Standard of Review*

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the . . . moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (2003); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works, Inc.*, 36 F.3d at 1518 (citing *Celotex Corp.*, 477 U.S. at 325). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e). "'Only disputes over facts that might affect the outcome of the suit under governing law will preclude the entry of summary judgment.'" *Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 531 (10th Cir. 1998) (quoting *Anderson*, 477 U.S. at 248). The court may consider only admissible evidence when ruling on a summary judgment motion. *See World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985). The factual record must be viewed in the light most favorable to the nonmoving party. *Concrete Works, Inc.*, 36 F.3d at 1518 (citing *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 [10th Cir. 1990].)

2.      *Plaintiff's First Claim for Relief — Declaratory Judgement and Reformation*

Plaintiff's first cause of action requests (1) a declaration by this court that Defendant violated Colo. Rev. Stat. §§ 10–4–706(4)(a) and 10–4–710 and (2) reformation of the insurance policy. (Compl. ¶¶ 37–42.) Specifically, Plaintiff's complaint states as follows:

> Plaintiff seeks a declaration that Defendant violated [Colo. Rev. Stat.] § 10–4–710 by failing to explain and offer the enhanced benefits provided therein for inclusion in Plaintiff's policy. . . . Plaintiff seeks a declaration that [Defendant] violated [Colo. Rev. Stat.] § 10–4–706(4)(a) by failing to provide Plaintiff with a written explanation of all available coverages before issuing his policy. . . . Because Defendant failed to comply with [Colo. Rev. Stat.] §§ 10–4–710 and 10–4–707(4)(a), thereby depriving Plaintiff of

> the informed choice intended by the above-cited Colorado statutes and the ability to accept such an offer, the policy should be reformed to reflect such coverage.

(Compl. ¶¶ 39–41.) I address each alleged basis for declaratory relief then I address Plaintiff's claim for reformation.

### a. *Plaintiff's Request for Declaratory Relief*

#### (1) *Violation of Colo. Rev. Stat. § 10–4–706(4)(a)*

Plaintiff contends that he is entitled to declaratory relief because "[Colo. Rev. Stat.] § 10–4–706(4)(a) requires that, prior to the issuance of any auto policy, the insurance company must explain, in writing, '***all available PIP options***.'" (Pl.'s Br. at 6 [emphasis in original].) From the outset, I note that Plaintiff is not arguing that he never received an offer or explanation of any available benefits from Defendant. (*Id.* at 6–8.) Rather, Plaintiff is arguing that he never received "an effective explanation [or offer] of enhanced PIP coverage." (*Id.* at 8–9.) Plaintiff asserts that "any insurer issuing (selling) complying policies must provide *written explanations* of all available coverages." (*Id.* at 7 [emphasis added].) Plaintiff essentially argues that "[t]he requirements of [section] 706(4)(a) are incorporated into the offer of the optional PIP coverages of [Colo. Rev. Stat.] § 10–4–710. If the requirements of [section] 706(4)(a) are not met, a meaningful offer under [section] 710 cannot occur." (*Id.* at 8.)

The written explanation requirement in section 10–4–706(4)(a) is not applicable to the offer of enhanced PIP coverages in section 10–4–710. Section 10–4–706(4)(a) requires a written explanation of the minimum PIP coverages. Specifically, section 10–4–706(4)(a) provides:

-9-

> An insurer issuing policies providing *coverages as set forth in this section* shall provide written explanations of all available coverages prior to issuing any policy to an insured. After a named insured selects a policy with desired personal injury protection coverage, an insurer shall not be under any further obligation to notify such policy holder in any renewal or replacement policy of the availability of basic personal injury protection policy or of any alternative personal injury protection coverage.

Colo. Rev. Stat. § 10–4–706(4)(a) (emphasis added). Section 10–4–706 does not address the enhanced PIP benefits. *Id.* The only benefits detailed and "set forth in this section" are the minimum PIP coverages. *See id.* Thus, by its express terms, section 10–4–706(4)(a), limits its applicability to the coverages defined by the same section — section 10–4–706. The written explanation requirement refers only to the coverages set forth in section 10–4–706 and not the enhanced coverages as provided for in a different section — 10–4–710. Moreover, section 10–4–710, on its face, does not require written explanations. Section 10–4–710(2)(a) only requires "that the insured shall offer" enhanced benefits. Colo. Rev. Stat. § 10–4–710(2)(a). In fact, Plaintiff agrees that "the statute does not address whether an offer must be in writing." (Pl.'s Br. at 8.) Finally, the Tenth Circuit, in addressing section 10–4–707, *Brennan*, and the Colorado No-Fault act, highlighted the fact that section 10–4–706 and section 10–4–710 are not treated in a similar manner under the statutory scheme at issue. *Clark*, 319 F.3d at 1238. Therefore, Defendant did not have an obligation to provide a written explanation of enhanced PIP benefits under section 10–4–706(4)(a).

Plaintiff offers two arguments that counsel against this result. First, Plaintiff argues that "[i]f the requirements of [section] 706(4)(a) are not met, a meaningful offer under [section] 710 cannot occur. This conclusion is confirmed by the statements at the committee hearing for the bill

establishing the statute, where the committee members construed [Colo. Rev. Stat.] § 10–4–710 to require a written form." (Pl.'s Br. at 8; Pl.'s Resp. at 6.) Plaintiff refers to a transcript of the testimony of House Bill 1175. (Pl.'s Br., Ex. 17 [Transcript of Audiotape of Testimony Concerning House Bill 1175].) Plaintiff acknowledges that "the statute does not address whether an offer must be in writing," but Plaintiff contends that the aforementioned statements "confirm that an offer without an explanation is meaningless and the two must occur together." (*Id.* at 8.) Despite Plaintiff's contention, the legislative history does not change the plain meaning of the statute. "Only when the statute is unclear or ambiguous may the court look beyond the words of the statute to legislative history or rules of statutory construction." *People v. Goodale*, 78 P.3d 1103, 1107 (Colo. 2003). Here, as stated above, Plaintiff acknowledges that 10–4–710(2)(a), unlike section 10–4–706(4)(a), "does not address whether an offer must be in writing." (Pl.'s Br. at 8.) Thus, it is not necessary to evaluate the legislative history because the statute is clear on its face.[2]

Second, Plaintiff argues that the Colorado Division of Insurance, in the Market Conduct Examination Reports for Midwestern Mutual and Nationwide, states "emphatically that [section

---

[2]Even assuming it was appropriate for this court to evaluate the legislative history of the statute, the proffered hearing transcript does not support Plaintiff's position. Plaintiff asserts that "the committee members construed [Colo. Rev. Stat.] § 10–4–710 to require a written form." (Pl.'s Br. at 8.) The hearing transcript does not address that issue and Plaintiff's contention to the contrary is absurd. In fact, the transcript states that "what we would like to do, . . . Section 2 would reduce the required options that must be printed out and offered to the potential insureds to just two in the areas. The same areas as now, but limit how much you need to do the variations." (*Id.*, Ex. 17 at 4 [Transcript of Audiotape of Testimony Concerning House Bill 1175].) This statement does not support Plaintiff's contention that the legislative history demands that this court read a written requirement into section 10–4–710.

10–4–]706(4)(a) requires that an explanation of enhanced PIP benefits must be in writing." (*Id.* at 9.) The market conduct examination provided by Plaintiff is not relevant because it does not apply to Defendant in this case. (*Id.*, Ex. 18–19 [Midwest Mutual Ins. Co. Market Conduct Examination].) Even assuming this report were relevant, Plaintiff cannot overcome the plain language of the statute. Plaintiff has not demonstrated that Defendant violated section 10–4–706(4)(a) by failing to provide Plaintiff a written explanation of enhanced PIP benefits under section 10–4–710(2)(a). Accordingly, Defendant is entitled to summary judgment with respect to Plaintiff's request for declaratory relief regarding section 10–4–706(4)(a).

### (2) *Violation of Colo. Rev. Stat. § 10–4–710*

Next, Plaintiff argues that he is entitled to a declaration that "Defendant violated [Colo. Rev. Stat.] § 10–4–710 by failing to explain and offer the enhanced benefits provided therein for inclusion in Plaintiff's policy." (Compl. ¶ 39.) Section 10–4–710(2)(a) requires that:

> Every insurer shall offer the following enhanced benefits for inclusion in a complying policy, in addition to the basic coverages described in section 10–4–706, at the option of the named insured:
> (I) Compensation of all expenses of the type described in section 10–4–706(1)(b) without dollar or time limitation;
> (II) Compensation of all expenses of the type described in section 10–4–706(1)(b) without dollar or time limitations and payment of benefits equivalent to eighty-five percent of loss of gross income per week from work the injured person would have performed had such injured person not been injured during the period commencing on the day after the date of the accident without dollar or time limitations.

Colo. Rev. Stat. § 10–4–710(2)(a). Unlike section 10–4–706(4)(a), section 10–4–710(2)(a) does not require that the insurer provide written explanations of the available coverages. *See id.*; *cf.*

Colo. Rev. Stat. § 10–4–706(4)(a). The insurer simply needs to make an *offer* of enhanced PIP coverages to comply with section 10–4–710(2)(a).

Plaintiff asserts that Defendant never made a compliant offer of enhanced PIP benefits to Plaintiff. (Pl.'s Resp. at 6–8; Pl.'s Br. at 11–19.) While the statute does not define "offer" *per se*, Plaintiff proffers a contract definition of the term offer, to be used when evaluating whether Defendant made an appropriate offer under section 10–4–710(2)(a). (Pl.'s Br. at 14.) "Under principles of contract law, an offer is a manifestation of willingness to enter into a bargain, made in such a way as to justify the offeree's understanding that acceptance will conclude the bargain." (Pl.'s Br. at 14 [citing *Kuta v. Joint Dist. No. 50(J)*, 799 P.2d 379, 382 (Colo. 1990)].) There are three separate time periods in which Defendant purportedly offered Plaintiff enhanced PIP benefits. I evaluate each time period under Plaintiff's proffered definition.

First, Plaintiff purchased his policy in 1992 through Defendant's Leland Woelk Agency in Lamar, Colorado. (Pl.'s Br., Ex. 2 [Application for Auto. Ins.].) Plaintiff's 1992 policy indicated four types of PIP benefits. (*Id.*) While Plaintiff chose level P3 benefits, the 1992 form also provided for P4 and P8 — enhanced PIP benefits. (*Id.*) Further, Defendant contends that it offered Plaintiff the extended PIP coverage. (Def.'s Resp., Ex. B–1 at 41, 53–54 [Dep. of Leland Woelk].) Specifically, Defendant's agent, Lorene Thompson, who sold Plaintiff's wife the policy, testified that:

> the practice of the agency was to offer the basic coverages but recommended that people always look at doing more than just what the basic PIP coverage was, so I'm sure that she was offered — she was probably offered lowest. But she was also offered higher limits of liability or PIP coverage also because it was the practice to — of Leland's agency to offer the coverages.

-13-

(Def.'s Resp., Ex. B–2 at 28–29 [Dep. of Lorene Thompson].)  Plaintiff does not dispute that his 1992 application for insurance contained P4 and P8 benefits, however, Plaintiff contends that Defendant's agent, Thompson, never offered Plaintiff or his wife enhanced PIP coverage.  (Pl.'s Reply, Reply Re: Statement of Undisputed Material Facts ¶ 3, Ex. 29 at 96–108 [Dep. of Mary Stickley].)  Plaintiff's wife's deposition is enough to create a genuine issue of fact regarding whether Defendant offered Plaintiff enhanced PIP benefits in 1992 because Plaintiff's wife purchased the policy.

Irrespective of whether Defendant offered Plaintiff enhanced PIP benefits in 1992, Defendant certainly offered Plaintiff enhanced benefits in 1998 and again in 1999, both prior to Plaintiff's accident.  In 1998, fourteen months prior to Plaintiff's accident, Defendant sent Plaintiff a renewal notice that stated as follows:

> **HIGHER PERSONAL INJURY PROTECTION COVERAGE LIMITS ARE AVAILABLE**
> You can purchase higher Personal Injury Protection coverage limits with no deductible.
> Coverage P4 semi-annual Premium = $110.16
> Coverage P8 semi-annual Premium = $107.27
> See the enclosed News and Notes article for an explanation of these coverages.

(Def.'s Br., Ex. A–10 [Pl.'s Auto Renewal Form].)  This language expressly offers Plaintiff the availability of enhanced PIP coverage and the ability to purchase enhanced PIP benefits at the stated costs.  (*Id.*)  Moreover, the attached "News & Notes" article gave Plaintiff a more detailed explanation, beyond the cost and availability, of these coverages.  (*Id.*)  Under Plaintiff's proffered definition of "offer," Defendant's statement on the renewal notice certainly evinced a

manifestation of a willingness to enter into a bargain regarding enhanced PIP benefits. Thus, even assuming that there had been some defect in Defendant's initial offer of enhanced benefits, Defendant complied with section 10–4–710 by August 1998, when it sent the above mentioned renewal notice along with the "News & Notes."

Plaintiff contends "the [r]enewal notice accompanied by the News and Notes article that was sent to Plaintiff on July 22, 1998, [could not] be a compliant offer, because no compliant coverage was available to sell at that time." (Pl.'s Resp. at 8.) Plaintiff asserts that in 1998, Defendant "had a form PIP Endorsement and a form insurance policy that were not statutorily compliant . . . , therefore any offers and explanations of those coverages also would not have been compliant." (Pl.'s Br. at 16.) In other words, Plaintiff contends that because Defendant had not removed the pedestrian limitation from its policy, the alleged re-offer was defective. (*Id.*) I do not need to address whether Plaintiff has standing to bring a claim based on the pedestrian limitation even though he was not a pedestrian, because several months before his accident, Plaintiff received an offer from Defendant containing all available coverages in a policy that did not contain the pedestrian limitation.

Sometime prior to March 1999, Defendant sent Plaintiff Endorsement 6850AJ. (Def.'s Br., Statement of Undisputed Material Facts ¶ F; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ F.) The Endorsement became effective no later than March 22, 1999. (*Id.*) The Endorsement removed the pedestrian limitation from Plaintiff's policy and included a complete schedule of all available coverages, including P4 and P8 enhanced benefits. (Def.'s Br., Ex. A–2 [Endorsement 6850AJ].) Indeed, Plaintiff acknowledges that Defendant had

an insurance form that complied with the law by January 1999. (Pl.'s Reply at 1, 5, 10; Pl.'s Resp. at 6–7.) Thus, even assuming there had been a defect in Defendant's 1992 and 1998 offers of enhanced PIP benefits, Defendant complied with section 10–4–710, at the latest, by March 1999, when it sent the aforementioned Endorsement. Accordingly, at a minimum, Plaintiff received written offers — which, as stated above, goes beyond what the statute requires — in 1999, prior to his accident.

Interestingly, Plaintiff's only argument that counsels against this result is as follows:

> [w]hen [Plaintiff's] counsel later asked [Defendant] to identify the circumstances when [Plaintiff] received what [Defendant] considered to be an offer of the enhanced PIP benefits for inclusion within a complying policy, [Defendant] cited exclusively to the date it disseminated the combined documents of the Renewal Notice and the News and Notes article in 1998. Therefore, as a matter of law, [Defendant] is bound by its reliance upon that singular event as its reason for denying enhanced benefits coverage in this case.

(Pl.'s Br. at 11; Pl.'s Reply at 8.) In support, Plaintiff relies on exhibit nine, which is allegedly a letter Defendant sent to Plaintiff. (Pl.'s Br. at 11.) First, exhibit nine is not a letter, it is a renewal notice. (Pl.'s Br., Ex. 9 [Auto Renewal Notice].) Thus, Plaintiff's reliance on exhibit nine is peculiar and not relevant to this argument. Second, assuming Plaintiff intended to rely on exhibit eight and that Plaintiff's legal proposition is correct,[3] Plaintiff's position is still flawed. Exhibit eight does not mention the year 1998, nor does exhibit eight limit Defendant's purported offer of enhanced PIP benefits to a certain time frame. (*Id.*, Ex. 8 [July 7, 2004 Letter from Defendant].)

---

[3]Plaintiff relies on *Peiffer v. State Farm Mut. Auto. Ins. Co.*, 940 P.2d 967 (Colo. App. 1996), for the proposition that Defendant is bound by its denial letter and the reasons stated therein for denying Plaintiff coverage. I make no determination at this time regarding whether *Peiffer* stands for the proposition for which Plaintiff asserts.

Therefore, even assuming Plaintiff meant to rely on exhibit eight, this letter does not place any limitations on Defendant's ability to rely on Endorsement 6850J. Accordingly, Defendant is entitled to summary judgment with respect to Plaintiff's request for declaratory relief regarding section 10–4–710.

### *b.  Reformation*

Plaintiff's claim for reformation states the following: "[b]ecause Defendant failed to comply with [Colo. Rev. Stat.] §§ 10–4–710 and 10–4–706(4)(a), thereby depriving Plaintiff of the informed choice intended by the above-cited Colorado statutes and the ability to accept such an offer, the policy should be reformed to reflect such coverage." (Compl. ¶ 41.) Generally, under Colorado law, "[r]eformation of a written instrument is appropriate only when the instrument does not represent the true agreement of the parties. The purpose of reformation is to give effect to the parties' actual intentions." *Carder, Inc. v. Cash*, 97 P.3d 174, 180–81 (Colo. App. 2003) (citing *Md. Cas. Co. v. Buckeye Gas Prods. Co.*, 797 P.2d 11, 13 [Colo. 1990]). As is relevant to the instant case, "when . . . an insurer fails to offer the insured optional coverage that satisfies [the statute], additional coverage in conformity with the offer mandated by statute will be incorporated into the policy." *Brennan*, 961 P.2d at 554 (citing *Thompson v. Budget Rent-A-Car Systems, Inc.*, 940 P.2d 987 [Colo. App. 1996]). Essentially, when a policy is violative of a statute, reformation is the required remedy to assure that coverage will meet the statutory minimums. *Clark v. State Farm Mut. Auto. Ins. Co.*, 292 F. Supp. 2d 1252, 1266 (D. Colo. 2003) (citation omitted).

In the instant case, reformation is not appropriate. First, as stated above, (Analysis § 2[a][1]), *supra*, Defendant did not violate Colo. Rev. Stat. § 10–4–706(4)(a). Section 10–4–706(4)(a) does not mandate that Defendant provide a written explanation of the enhanced PIP benefits under section 10–4–710. Thus, reformation is not appropriate on this ground.

Second, as stated above, (Analysis § 2[a][2]), *supra*, Defendant made an offer of enhanced PIP benefits to Plaintiff on at least three occasions. Even assuming Defendant's first two offers did not occur or were not valid, Defendant offered Plaintiff enhanced PIP benefits in a complying policy at the latest in March 1999. Plaintiff agrees that Defendant's Endorsement 6850J to the Policy became effective not later than March 22, 1999. (Def.'s Br., Statement of Undisputed Material Facts ¶ F; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ F.) Thus, even assuming the initial Policy Defendant provided to Plaintiff was defective, at the latest, Defendant complied with the statute by March 1999. Accordingly, by the time of Plaintiff's accident in October 1999, Defendant had reformed Plaintiff's policy. For the foregoing reasons, Defendant is entitled to summary judgment on Plaintiff's claim for reformation.

### 3.     *Plaintiff's Remaining Claims*

Plaintiff's second, third, and fourth claims for relief are all premised on Defendant's alleged failure to pay and offer him additional PIP benefits in excess of the level of benefits Plaintiff purchased. (Compl. ¶¶ 43–60.) In absence of a valid claim for reformation, incorporating a higher level of benefits into Plaintiff's contract, Plaintiff does not have a valid claim for breach of contract, willful and wanton breach of contract, or breach of the implied

covenant of good faith and fair dealing. Accordingly, Defendant is entitled to summary judgment on Plaintiff's second, third, and fourth claims for relief.

### *4. Conclusions*

Based on the foregoing it is therefore ORDERED that:

1. Defendant's motion for summary judgment (# 35) is GRANTED.

2. Plaintiff's motion for partial summary judgment (# 37) is DENIED.

3. Plaintiff's request for oral argument (# 39) is DENIED.

4. The clerk shall forthwith enter judgment in favor of Defendant and against Plaintiff, dismissing all claims with prejudice. Defendant may have its costs by filing a bill of costs within eleven days of the date of this order.

Dated this 18th day of November, 2005.

BY THE COURT:

s/ Edward W. Nottingham
EDWARD W. NOTTINGHAM
United States District Judge